**SO ORDERED.**

**SIGNED this 9 day of July, 2020.**



_____
**Stephani W. Humrickhouse**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WILMINGTON DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| TERRY SCOTT FERRIS and <br> JANE ELIZABETH FERRIS | 18-04942-5-SWH <br> CHAPTER 13 |
| Debtors. | |
| JOSEPH A. BLEDSOE, III, <br> CHAPTER 13 TRUSTEE, and <br> JANE ELIZABETH FERRIS, aka <br> JANE C. FERRIS | ADVERSARY PROCEEDING <br> NO. 19-00080-5-SWH |
| Plaintiffs, | |
| v. | |
| ELIZABETH DEVOS, in her official capacity as Secretary of the United States Department of Education, UNITED STATES DEPARTMENT OF EDUCATION, | |
| Defendant. | |

## ORDER GRANTING MOTION TO DISMISS

The matter before the court is the Motion to Dismiss Amended Adversary Complaint filed by the United States of America, by and through the United States Attorney for the Eastern District of North Carolina, on behalf of its agency, the United States Department of Education on December 30, 2019 (the "Motion to Dismiss"), Dkt. 22. The plaintiffs filed a response on January 15, 2020, Dkt. 23. A hearing was held in Wilmington, North Carolina on March 4, 2020. At the conclusion of the hearing, the court took the matter under advisement. The plaintiffs filed a supplemental brief on March 25, 2020, Dkt. 31.

## BACKGROUND AND PROCEDURAL POSTURE

On October 2, 2015, Jane Elizabeth Ferris executed a Parent Federal Direct PLUS Loan Master Promissory Note ("Parent PLUS Loan") to obtain funds to pay the tuition and other qualified educational expenses for her adult daughter to attend East Carolina University ("ECU"). On the Master Promissory Note form, in **Section A: Borrower Information – To Be Completed by the Borrower**, the debtor checked the box identifying herself as a **"Parent of a Dependent Undergraduate Student."** The following disbursements were made under the Parent PLUS Loan directly to ECU: $6,000 on October 6, 2015; $10,000 on January 7, 2016; $6,200 on August 16, 2016; $6,000 on January 4, 2017; and $11,824 on August 14, 2018.

Jane Elizabeth Ferris and Terry Scott Ferris (the "debtors") filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code on October 9, 2018. The United States Department of Education ("USDE") filed a proof of claim in the bankruptcy case in the amount of $38,754.41.

On May 23, 2019, this adversary proceeding was filed by the female debtor (hereinafter "debtor") seeking to avoid fraudulent obligations, determine dischargeability of debt, and objecting to the USDE's claim. On August 8, 2019, an amended complaint was filed adding the

2

chapter 13 trustee as a plaintiff. The USDE filed the instant Motion to Dismiss on December 30, 2019 pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7012, on the grounds that the debtor lacks standing to exercise the trustee's "strong-arm" powers and that the amended complaint failed to state a claim upon which relief can be granted because the debtor received "reasonably equivalent value" in exchange for her promissory note to the USDE. The USDE also alleged that the plaintiff was improperly using fraudulent transfer law to avoid the more rigorous requirements necessary to have the debt discharged pursuant to § 523(a)(8). The plaintiffs filed a response to the Motion to Dismiss on January 15, 2020 arguing that the debtor has standing to pursue these claims and disputing that she received "reasonably equivalent value" in consideration for incurring the debt.

A hearing was held in Wilmington, North Carolina on March 4, 2020, at the conclusion of which the court took the matter under advisement. The plaintiffs filed a supplemental brief on March 25, 2020, Dkt. 31. For the reasons set forth below, the Motion to Dismiss will be granted.

## DISCUSSION

The USDE seeks to dismiss the case for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6), as made applicable to adversary proceedings through Federal Rule of Bankruptcy Procedure 7012. Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012. "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of the complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (citation omitted). A complaint must contain sufficient facts that when accepted as true "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When ruling on a 12(b)(6) motion, a court must accept the

3

plaintiff's factual allegations as true and draw all reasonable factual inferences in the plaintiff's favor. *Edwards*, 178 F.3d at 244.

The purpose of the Parent Plus Loan Program is to provide parents with the opportunity to fund their dependent children's secondary education. *Roomeliotis v. Johnson & Wales Univ. (In re Demours)* 586 B.R. 379, 386 (Bankr. D. Conn. 2018). The amended complaint seeks to avoid the Parent PLUS Loan as a fraudulent obligation under 11 U.S.C. § 548(a)(1)(B), under N.C. Gen. Stat. §§ 39-23.4(a)(2), 39-23.7(a)(1), and under 28 U.S.C. §§ 3304(b)(1)(B), 3306(a)(1), asserting that the last two remedies are made available to the trustee pursuant to 11 U.S.C. § 544(b)(1).[1] Section 548(a)(1) provides in relevant part as follows:

> The trustee may avoid . . . any obligation incurred by the debtor, that was incurred on or within 2 years before the date of the filing of the petition if the debtor voluntarily or involuntarily . . . received less than a reasonably equivalent value in exchange for such obligation . . . .

11 U.S.C. § 548(a)(1)(B)(i) (2018). Likewise, under North Carolina law, a transfer or obligation is voidable if the debtor did not receive "reasonably equivalent value" in exchange for the transfer or obligation. N.C. Gen. Stat. §§ 39-23.4(a)(2), 39-23.7(a)(1) (2019).

The parties, in both their written pleadings and oral arguments, have concentrated on the split in caselaw across the nation over the issue of whether reasonably equivalent value is received by a debtor in the situation wherein a parent has provided funds for the education of an adult child either directly or through the guaranty of the student's obligation.[2] Additionally, the parties have

---

[1] The court does not acknowledge or accept that the debtor may rely upon 28 U.S.C. §§ 3304(b)(1)(B) or 3306(a)(1) to employ the strong-arm powers of § 544, but that analysis is not necessary to the determination of the matter at bar.
[2] A handful of courts have found that payment of a child's undergraduate expenses are reasonable and necessary expenses for maintenance of the family, and that therefore, the parent receives reasonably equivalent value in exchange for paying a child's tuition. *See, e.g., Eisenberg v. Pa. State Univ. (In re Lewis)*, 574 B.R. 536, 541 (Bankr. E.D. Pa. 2017); *Shearer v. Oberdick (In re Oberdick)*, 490 B.R. 687, 711-12 (Bankr. W.D. Pa. 2013). Conversely, other courts have held that tuition payments for a child are avoidable transfers. *See, e.g., DeGiacomo v. Sacred Heart Univ. (In re Palladino)*, 942 F.3d 55, 59 (1st Cir. 2019); *Geltzer v. Oberlin Coll. (In re Sterman)*, 594 B.R. 229, 235-38 (Bankr. S.D.N.Y. 2018). Those courts find that the parent does not receive reasonably equivalent value in exchange for the

4

argued over whether the trustee or the debtor has the authority to bring an action to avoid such an obligation.[3] Those arguments miss the mark in this case.

Instead, the focus of the discussion should begin with an analysis of fraudulent transfer law itself to determine whether the avoidance of the debtor's obligation to USDE is consistent with the purposes of §§ 548 and 544. Fraudulent transfer law allows creditors to avoid transactions which unfairly or improperly deplete a debtor's assets <u>or that unfairly or improperly dilute the claims against those assets</u>. 5 Collier on Bankruptcy ¶ 548.01 (16th ed. 2020). "The purpose of the Bankruptcy Code's avoidance provisions is to prevent a debtor from making transfers that diminish the bankruptcy estate to the detriment of creditors." *Grayson Consulting, Inc. v. Wachovia Sec., Inc., (In re Derivium Capital LLC)*, 716 F.3d 355, 361 (4th Cir. 2013). "Hence, the proper focus is on the net effect of the transfers on the debtor's estate, the funds available to the unsecured creditors." *In re Jeffrey Bigelow Design Group*, 956 F.2d 479, 484 (4th Cir. 1992).

The inquiry in this case is whether the incurrence of the obligation by the debtor to USDE and the treatment of that obligation as an allowed claim will actually dilute the other unsecured claims. Claims are diluted if the participation of the "fraudulent" claim in the unsecured "pot" will result in a lower distribution to other "non-fraudulent claims." That analysis requires a determination of what distribution is contemplated to the unsecured creditors in this case and whether inclusion of the claim to USDE would reduce such distribution to those other unsecured creditors. The simple answer in this case is that it would not, and therefore no proper purpose under fraudulent transfer law is served by avoiding the debt.

---

tuition payments because the tuition payments deplete the bankruptcy estate and furnish no direct value to creditors. *Id.*

[3] Some courts have held that a chapter 13 debtor has standing to bring avoidance actions. *See, e.g., In re Fitzgerald*, 237 B.R. 252, 262 n.14 (Bankr. D. Conn. 1999); *Hernandez v. Cantu (In re Hernandez)*, 150 B.R. 29, 30 (Bankr. S.D. Tex. 1993). Other courts hold that chapter 13 debtors lack standing to bring avoidance actions. *See, e.g., LaBarge v. Benda (In re Merrifield)*, 214 B.R. 362, 365 (B.A.P. 8th Cir. 1997); *Hollar v. United States*, 174 B.R. 198, 203 (M.D.N.C. 1994); *Montoya v. Boyd (In re Montoya)*, 285 B.R. 490, 494 (Bankr. D.N.M. 2002).

5

The debtors filed their chapter 13 plan on October 9, 2018. The debtors had current monthly income which resulted in a determination that the debtors had "[b]elow the applicable state medium income" and were entitled to propose a 36-month plan. Section 1.5 of the chapter 13 plan provided that the debtors had disposable income of $0.00. The plan provides for 36 payments of $90.00 per month for a total of $3,240.00. The plan further provides that the debtors will make direct payments of $100.00 per month, to end on February 19, 2019, on their vehicle. Trustee fees were estimated at $194.00, and $3,000.00 was to be paid to the debtors' attorney through the plan. In essence, this plan is an attorneys' fees only plan. No distribution to unsecured creditors was contemplated. The plan was confirmed by order dated December 10, 2018.[4]

The claims register associated with this case indicates that nine claims were filed:

| Claim | Amount | Creditor |
|---|---|---|
| #1 | $ 16,522.70 | Freedom Financial Asset Management |
| #2 | $ 38,754.41 | U.S. Department of Education |
| #3 | $        0.00 | Pender County Tax Collector |
| #4 | $   1,342.29 | Sprint Corporation |
| #5 | $   1,578.90 | IRS |
| #6 | $   2,443.63 | Santander Consumer |
| #7 | $      763.00 | Ashley Funding Services |
| #8 | $      364.00 | Ashley Funding Services |
| #9 | $      843.94 | North Carolina Department of Revenue |

Courts should evaluate fraudulent transfers from the creditor's perspective. *DeGiacomo v. Sacred Heart Univ., Inc. (In re Palladino)*, 942 F.3d 55, 59 (1st Cir. 2019). How are unsecured creditors benefited by the avoidance of the USDE obligation? Should a trustee bring or join an action which will result in no benefit to unsecured creditors? Perhaps the trustee sought to "tee up" the issue of "reasonably equivalent value," there being no Circuit level authority in this jurisdiction. The record is silent on this point. But what is much clearer, is the intent of the debtor.

---

[4] On December 31, 2019, a Consent Order Modifying Chapter 13 Plan was entered which increased the payments under the plan to $4,032.00. No reason was set out in the Consent Order for modification of the plan, however, a review of the claims register reveals that the filing of the North Carolina Department of Revenue's proof of claim on January 29, 2019 ($778.54 priority, $65.40 nonpriority) would have required an increase in payments under the plan.

The debtor is not seeking to recover the transfers made to ECU from either ECU or her daughter. Such a recovery *might* increase assets available to other creditors.[5] Instead, the debtor is seeking to avoid an obligation that will have no affect on the distribution to other creditors, but only serves to improve her chances to discharge the loan without satisfying the requirements of § 523(a)(8).

On the record before this court, there is little chance under present case law, even as recent cases have softened the rigorous requirements,[6] that the obligation owed to USDE would be discharged pursuant to § 523(a)(8). The debtor's plan therefore is to attempt to achieve discharge through fraudulent avoidance. If the obligation is avoided pursuant to § 548, the debtor argues there is no enforceable debt to withstand discharge. A novel and creative attempt, but not one consistent with the spirit or purpose of fraudulent conveyance law.

Finally, the court notes that, without deciding the "standing" or "authority to bring this action" question,[7] the analysis undertaken in this case supports the propriety of requiring the trustee to serve as plaintiff. If the trustee must make the decision to bring the fraudulent avoidance, he will do so if, and only if, there will be some benefit to unsecured creditors. Allowing the debtor to bring the lawsuit, may not always, as in this case, result in any benefit to creditors. Perhaps that is sufficient reason to require at least trustee participation as plaintiff in any § 548 action brought in a chapter 13 case.

The claims asserted by the plaintiffs serve no valid legal avoidance purpose, and thus cannot support a claim for relief under §§ 548 or 544. The Motion to Dismiss is ALLOWED.

**END OF DOCUMENT**

---

[5] Where such transfers depleted the estate of the debtor, recovery is allowed. In the case of Parent Plus Loans, and other loans which are paid directly to the educational institution, courts have held that the funds never became property of the estate and thus those transfers did not deplete the estate and recovery was denied. *See, e.g., Eisenberg v. Pa. State Univ. (In re Lewis)*, 574 B.R. 536, 539 (Bankr. E.D. Pa. 2017).

[6] *See Rosenberg v. N.Y. State Higher Educ. Servs. Corp. (In re Rosenberg)*, 610 B.R. 454 (Bankr. S.D.N.Y. 2020).

[7] 5 Collier on Bankruptcy ¶ 548.02 (16th ed. 2020) (citing *Grede v. Bank of N.Y. Mellon*, 598 F.3d 899, 900 (7th Cir. 2010)).